HANEY SCHOOL FURNITURE COMPANY, Appellant, vs.
MEDARY, Respondent.

*November 21—December 13, 1904.*

*Contracts: Bond securing notes: Construction: Renewals.*

In an action against the surety on a bond securing certain promis-
sory notes of the principal, a provision of the bond, that "said
notes may be from time to time renewed during" the term of
the bond, is construed to mean that the obligee may take re-
newals without affecting the liability of the surety, and not
as securing to the principal the privilege to renew from time
to time as notes fell due during the term of the bond.

APPEAL from a judgment of the circuit court for La
Crosse county: J. J. FRUIT, Circuit Judge. *Reversed.*

Action by the obligee to recover of the surety for breach of
a bond, the material portions of which are as follows:

"Know all men by these presents, That we, C. F. Lock-
wood and *J. S. Medary* are bound unto the *Haney School
Furniture Co.* in the penal sum of two thousand dollars, for
payment of which . . . we bind ourselves . . .

"Sealed with our seals and dated this 16th day of May,
1900.

"Whereas,—the said Lockwood has been for some time
and now is indebted to said *Furniture Company* upon notes
which have been from time to time renewed and upon open
account, . . . and said *Medary* has been surety for said
Lockwood to the extent of two thousand dollars under a bond
covering the transactions of one year subsequent to May 16th,
1899, and said Lockwood has been and is continuing to make
payments on such indebtedness, and said *Company* is willing
to renew and carry said notes in consideration of this bond,
which is given in substitution and exchange for the afore-
said bond.

"Now therefore, the condition of this obligation is such
that if within one year, or at the expiration of any renewal
notes given during the year said Lockwood shall pay said
notes and all renewals therefor, then this obligation shall be
void.

"It is agreed that the said notes may be from time to time renewed during the said year and for the period customary in bankable paper, and that the liability of the surety hereunder shall in no event exceed the sum of two thousand dollars.

"C. F. Lockwood.    [Seal.]<br>
"J. S. Medary.      [Seal.]"

The breach alleged was that a renewal of the notes mentioned occurred March 11, 1901, all being put in one note for $2,538.35, due May 16, 1901; that neither the original notes nor any of the renewals were paid within one year from the date of the bond or thereafter, and that June 26th after the maturity of the last renewal mentioned, and after the maturity of the bond, due demand was made for payment by the surety of the sum of $2,000, and that the same was refused.

The defendant pleaded that plaintiff breached the bond, in that when the note of March 11, 1901, became due it refused, upon due request therefor, to renew the same. The evidence was to the effect that there was such refusal. A verdict was directed in favor of the defendant and judgment was rendered accordingly.

For the appellant there was a brief by *McConnell & Schweizer,* attorneys, and *Taggart, Denison & Wilson,* of counsel, and oral argument by *J. E. McConnell* and *A. C. Denison.*

For the respondent there was a brief by *Woodward & Lees,* and oral argument by *G. M. Woodward.*

Marshall, J. The only question for decision is: Did the provision at the foot of the bond that "said notes may be from time to time renewed during the said year" secure to the maker thereof the privilege to renew from time to time as notes fell due during one year, or was its purpose to enable the obligee to take renewals without affecting the liability of

the surety? The court below took the former view. Very
little light can be shed on the subject as to which view is cor-
rect by referring to the authorities, or by discussion. None
but very familiar rules for construction furnish aid in the
matter. The general features of the bond indicate pretty
clearly an intention that the renewals should not be taken,
due after one year from its date. If such renewals had been
taken respondent would very likely have claimed, and with
reasonable ground therefor, a fatal breach of the bond. It
seems pretty clear that the sole consideration for the instru-
ment was the first renewal of the notes. The words "renew
and carry said notes" refer to one renewal only. While it
was contemplated that there might be re-renewals, it being
said in effect, that payment of renewals should extinguish
the bond, no obligation for such renewals is mentioned in the
consideration. The plain purpose at that point seems to have
been that in case of renewals, payment thereof should have
the same effect as the payment of the original paper. The
language which follows: "It is agreed that the notes may be
from time to time renewed during the said year," etc., "and
that the liability of the surety hereunder shall in no event
exceed two thousand dollars," does not seem to have been
used to secure to the principal obligor an advantage, but to
give a carefully guarded privilege to the obligee, as between
it and the surety. It says to the latter, you may favor the
principal obligee by renewals within one year, without re-
leasing the liability of the surety to you, it being understood,
however, that in no event shall the latter's liability exceed two
thousand dollars. If that is the correct construction of the
instrument, and we are constrained to hold that it is, appel-
lant was not bound to renew the notes when requested to do
so May 10, 1901, and the refusal to do so did not release the
surety.

It seems that the learned trial court may have been per-
suaded to adopt a contrary view to the conclusion we have

reached by applying the rule that in case of uncertainty as to which of two reasonable meanings of an instrument affecting the liability of the surety is the proper one, that one should be adopted which is most favorable to him. We are unable to discover in the situation before us such uncertainty. We note that the learned counsel for respondent gives much significance to the words "renew and carry said notes in consideration of this bond," as suggesting renewals from time to time during the year. It was so easy to use language plainly indicating that, if such was the intention, the omission to use it persuades strongly to the conclusion that the willingness *in præsenti* to renew refers to one renewal, and that the word "carry" refers to the original note, the idea being that whether the indebtedness remained evidenced by the latter or by renewals, the obligee was willing to carry the same for one year. While plainly appellant obligates itself to renew the notes existing at the date of the bond, if desired, the surety just as plainly bound himself for payment of the indebtedness evidenced by such notes, whether the same remained evidenced thereby or renewals thereof, if they were not paid by the maker within one year. The words "pay and discharge the aforesaid notes," (meaning those existing at the time the bond was made) "and all renewals therefor," make that plain. So "renewals" at that point refer to presently existing notes, not re-renewals. Otherwise the added clause providing for such renewals would be merely surplusage. A construction of an instrument which treats language apparently deliberately incorporated therein in regard to an important matter as useless, is not to be adopted if it can reasonably be avoided.

*By the Court.*—The judgment of the circuit court is reversed and the cause remanded for a new trial.